## ARROWSMITH v. VANARSDALE.

1. On reversal of judgment on *Certiorari*, if it appear by the record, or other-wise, that the amount recovered by the judgment has been raised, this court will, upon notice given, order a writ of restitution—without a scire facias for that purpose, as on reversal upon writ of error.

2. The amount for which such writ of restitution shall issue, will be settled by the court by an assessment signed by one of the judges.

3. The writ of restitution is to restore the plaintiff to all that he has lost, not to what the defendant has received; and the assessment will therefore be for the amount raised, including execution fees and costs, with interest from the day of payment.

4. Where a judgment brought up by a *Certiorari*, is reversed in part and af-firmed in part, the restitution will be for the amount raised beyond the amount adjudged due on affirmance, and the fees of execution, with interest.

Judgment in this case had been rendered in the Court of Common Pleas of Somerset County, in favor of the defendant below, for $34.48 costs on appeal. Execution was thereupon issued, and the money made. The cause having been removed into this court by *Certiorari*, judgment was rendered in favor of the defendant below for $10.35 costs, and reversed as to the residue—pursuant to the provisions of the statute *Rev. Stat.* 248 § 72.

*Ransom*, for the defendant, upon due notice now applied for a writ of restitution, and asked that the defendant below should be restored not only to the amount levied and paid to the plaintiff beyond the sum actually due, but also to the costs of executing the writ, and to interest upon the amount from the time of payment.

Argued before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

The CHIEF JUSTICE delivered the opinion of the court.

When this matter was first presented to the consideration of the court, we were disposed to limit the amount for which restitution should be ordered, to the sum actually paid to the plain-

tiff in *Certiorari,* upon the ground that he ought in justice to pay back no more than he had actually received. And this view appears to receive countenance from the ordinary precedents of writs of restitution upon reversal in error to be found in the books; which command restitution to be made of the sum actually paid to the plaintiff in execution. 2 *Sellon's Pr.* 421 ; *Archb. Forms* 200 ; 2 *Lilly's Ent.* 641.

But upon consideration, we are satisfied that the plaintiff in *Certiorari* is entitled to be restored to the whole amount actually paid by him, with interest from the time of payment, including as well the original judgment as also the costs of execution.

Upon an examination of the files of the Clerk's office for the last fifty years, it appears to have been the uniform practice of this court, upon application for restitution after à reversal in *Certiorari,* to direct for what sum the restitution should issue. This is done by a statement and calculation in. the nature and form of an assessment signed by a member of the court and filed. (a)    These statements, as far as can be ascertained, invariably cover the amount actually paid by the defendant in execution, including judgment, interest, and execution fees, with interest from the time of payment.    Though these assessments are usually applied for and made *ex parte,* yet the manner of making them, and the evidence upon which they are founded, show that the attention of the court must in many instances have been necessarily directed to the principles involved. Many of them have been prepared by the most eminent practitioners at the bar, and they have been signed by most of the judges who have sat upon this bench during the present century. Such uniformity of practice is strong evidence of what the law is, and upon a mere point of practice should be held decisive. If we entertain doubts as to the propriety of the practice, we should not, under the circumstance, feel disposed to disturb it.

But although we find no express adjudication. upon the point, and although the practice adopted by this court does not seem

---

(a) See *Hann* v. *McCormick* 1 *South.* 109, and Remarks of Kirkpatrick, C. J., on *Randolph* v. *Baylos, Reported* 1 *Penn.* 52, as to assessment and costs on writ of restitution.    Also *McChesney & al.* v. *Roberts,* 3 *Halst.* 272.

to be countenanced by the English precedents, we believe it to be in strict conformity to sound principle.

The judgment of reversal in error contains a clause that the plaintiff in error be restored to *all that he hath lost by reason of the judgment.* 2 *Lilly's Ent.* 247; *Archb. Forms* 195, 223, 224.

The judgment is not that the defendant in error shall restore all that he hath received, but that the plaintiff in error shall be restored to all that he hath lost. This includes necessarily the whole amount which he has paid, whether in the shape of damages, costs, execution fees, or interest. A compliance with the terms of the judgment would seem to require that the plaintiff in error should be fully indemnified.

The judgment of reversal, moreover, as between the parties to the suit, has relation to the time of the original judgment, and causes it to be reversed or annulled *ab initio*, and the parties, as far as practicable, to be restored to the position in which they stood at the time of the rendition of the original judgment. "For true it is," saith Coke, " that as unto the mean profits, the same shall have relation by construction of law, until the time of the first judgment given, and that is to favor justice, and to advance the right of him who hath wrong by the original judgment. And for the better apprehending of the law upon this point, it is to know that when any man recovers any possession or seisin of land in any action by erroneous judgment, and afterwards the judgment is reversed, as is said before, and upon that the plaintiff in the writ of error shall have a writ of restitution, and that writ recites the first recovery, and the reversal of it in the writ of error, is that the plaintiff in the writ of error shall be restored to his possession and seisin, *together with the issues thereof*, from the time of the judgment.

And the writ of restitution accordingly commands the Sheriff to cause the plaintiff to be restored without delay to the full seisin of the tenements aforesaid, with the appurtenances, and that he should inquire by the oath of twelve good and lawful men of his county, of the value of the issues and profits of the tenements aforesaid, with the appurtenances, from the time of the rendry of the false judgment to the day of the reversal

thereof, and that he should cause the issues and profits aforesaid to be made of the goods and chattels of the plaintiff in execution, and to be paid to the plaintiff in error.

"By which it appeareth, that the plaintiff in the writ of error shall have restitution against him who recovereth, of all the mean profits, without any regard by whom taken." *Menvil's Case,* 13 *Coke* 21; *Sympson* v. *Juxon, Cro. Jac.* 699; *Law of Executions,* 307.

Hence it appears, that when the seisin or possession of land is recovered by judgment at law, and the judgment is reversed upon error, the plaintiff in error is restored to his possession, or seisin, and to all the issues and profits of the land of which he was deprived by reason of the judgment; and that whether they were taken by the defendant in error, or by a mere trespasser, the true criterion of the amount for which the plaintiff in error is in justice entitled to have restitution, is the sum which he would be entitled to receive as remuneratory damages in an action of trespass, for seizing and selling his goods. Suppose the plaintiff in error, instead of having a writ of restitution, should sue the plaintiff in execution for a trespass in seizing and selling his goods by virtue of the execution?—What damages would he recover? Surely not the mere amount paid to the plaintiff, but the whole amount (supposing the sale to have been a fair one) raised by the sale of the property, whether it was applied to the payment of the plaintiff's execution, or the Sheriff's fees. And hence, in *Westerne* v. *Oreswick,* 4 *Mod.* 161, where Westerne had obtained judgment, and by virtue thereof had sold some of the defendant's cattle, the judgment having been set aside, and restitution awarded, the plaintiff offered to pay the defendant as much as the cattle sold for. But this was denied—because, say the court, they might be sold for less than they were really worth; and if the defendant brings his action of trespass, he will recover the full value.

When upon *fieri facias* the plaintiff sells a term to a stranger, and the judgment is afterwards reversed, the defendant shall be restored to the money for which the term sold.

So when upon an elegit, the sheriff delivers a lease for years on goods and chattels of the defendant to the plaintiff *per ra-*

*tionabile pretium et extentum.* Upon a reversal of the judgment, the defendant shall be restored to the term, or to the goods. 8 *Coke* 143; *Drurie's case, Bacon's Ab.* "*Execution,*" *Q.* In each of these cases it is obvious that the defendant in execution, upon reversal of the judgment, is in effect restored to all that he hath lost by the judgment, including the costs of execution, though not to indemnity or remuneration for the use of the specific thing delivered upon elegit.

The result of the cases would seem to be, that as well by the express terms of the judgment, as by the reason of the thing, the defendant in execution upon reversal, is to be restored to all that he hath lost by reason of the judgment. Here, as elsewhere, the plaintiff in execution proceeds at his peril, and cannot complain if, by reason of the reversal of the judgment he is compelled to indemnify the defendant against all damages sustained by the execution; and although the form of the ordinary writ of restitution, upon reversal on writ of error, does not seem adapted to the restitution of more than the sum actually recovered below, yet in principle, there is no valid objection to the practice adopted in this court, and to the form of restitution upon reversal on *Certiorari.*

Let the amount levied upon the judgment below, beyond the sum to which the plaintiff in execution was entitled, together with execution fees and interest, from the time of payment, be ascertained conformably to the practice of the court, and restitution issue for that amount. (*a*)

---

(*a*) *v. d'Accord Montgomery v. Bruere,* cited in *Scott* v. *Conover,* 5 *Halst.* 61.